9753

STATE v. GENS.

(93 S. E. 139.)

1. INTOXICATING LIQUORS—ILLEGAL TRANSPORTATION—PRIVATE CARRIER.— A private carrier could, for hire or as a favor, bring into the State not more than one gallon of liquor for another person's personal use during one calendar month without intent to violate the law, having the same privilege of transporting liquor as a common carrier for hire.

2. CRIMINAL LAW—NEW TRIAL—MISCONDUCT OF BYSTANDERS.—Where, in a prosecution for bringing intoxicating liquors into the State, certain women sat directly in front of the jury holding large posters condemning the liquor traffic, which the jury saw and read, a new trial should have been granted, since their action was an attempt to impede justice, to deny the defendant a fair and impartial trial, and to influence the jury to arrive at a verdict improperly.

3. CRIMINAL LAW—APPEAL—NEW TRIAL.—Where there is no doubt that the conduct of the audience in the Court room during a prosecution for illegal transportation of liquor was so irregular that the defendant did not obtain a fair and impartial trial, the appellate Court will grant a new trial.

Before PEURIFOY, J., Ridgeland, July, 1916.    Reversed.

William Gens was convicted of having in his possession an illegal amount of intoxicating liquors, and appeals.

*Mr. H. Klugh Purdy,* for appellant.

*Mr. Solicitor Warren,* for respondent.

July 12, 1917.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The defendant-appellant was indicted, tried, convicted and sentenced before Judge Peurifoy and a jury at the July term of Court, 1916, for Jasper county. The facts

of the case are that the defendant went to Savannah on business, and several persons got him to bring them back some whiskey.   He brought the whiskey in two suit cases, and on his arrival at Ridgeland was arrested without a warrant by the sheriff and his deputy, and the two suit cases containing the whiskey were taken from him.   One gallon of the whiskey belonged to him and the other to parties who had sent him for it.

Exceptions 3, 4 and 5 complain of error on the part of his Honor in excluding as incompetent and irrelevant evidence that defendant was transporting liquor from Savannah, Ga., for other persons, not more than one gallon for the personal use of any one person, and in refusing to allow defendant's witnesses to testify that this liquor was theirs and that they had employed the defendant to transport it for them, and in refusing to allow the defendant's witnesses to explain possession or ownership of the liquor in excess of one gallon.   The sixth exception complains of error in charging the jury that defendant was guilty if he had in his possession more than one gallon of liquor.   These exceptions must be sustained.

If the defendant was a private carrier for hire, or if as a favor he brought in for a friend not more than one gallon of liquor for one person's personal use during one calendar month, with no intent to violate the law, then he had the right to do so.   In other words, a private person or a private carrier for hire have the same rights and privileges to bring in and transport liquor as a common carrier for hire.   The same rules and restrictions apply to a private carrier for hire as a common carrier, no more or less.

The other exceptions complain of error on the part of his Honor in not granting a new trial on the ground that certain large posters condemning liquor traffic were held before the jury by several ladies during the trial or part of it; that the women were in the courthouse and sat directly in front of the jury and on the left

of the Judge; that the jurors saw and read the posters. That such a state of facts could exist in a Court of justice is almost inconceivable and be permitted to escape the attention of the officers of the Court and the presiding Judge. Generally nothing escapes the eyes of the Court officials; if one officer fails to see anything improper during the progress of the case, another will see it, and either put a stop to it himself or call the Court's attention to it. The action of the women was highly improper, in that it was an attempt to impede justice, however innocent on their part, and deny to the defendant a fair and impartial trial, guaranteed to him by the law of the land, an attempt to influence a sworn jury to arrive at a verdict improperly, and to be influenced by outside influence, trying the case by manufactured outside public opinion, and not by the facts of the case as developed in evidence and the law of the trial Judge. The parties should have been summarily dealt with. They were in gross contempt of Court and such conduct should not for a moment be overlooked. At the hearing before this Court it was stated that the presiding Judge's attention was not called to this phase of the case until after conviction and motion for a new trial was made. His Honor inquired of the jury then if they were in any manner influenced by these posters. They answered in the negative. His Honor should have set the verdict aside promptly when he found out how an attempt had been made to influence the jury.

There is no doubt that the action on part of the audience and crowd in the Court room during part of the trial was so irregular and improper and was allowed to go unchecked by the officials that the defendant did not get what he was entitled to, a fair, impartial and legal trial.

A new trial must be granted.

MESSRS. JUSTICES HYDRICK and GAGE concur in the opinion of the Court.

MR. CHIEF JUSTICE GARY concurs in the result.

MR. JUSTICE FRASER, *dissenting.* I think there should be a new trial because of the attempt to influence the jury.

But I can not concur in the holding that a man may bring into the State liquor for others, in quantity and divide it after he gets here.

The statute (in part) is:

"Section 1. *Unlawful for Intoxicating Liquors to Be Shipped Into State—Unlawful to Receive Same, Except as Provided.*—Be it enacted by the General Assembly of the State of South Carolina, That it shall be unlawful for any person, firm, corporation or company to ship, transport or convey any intoxicating liquors from a point without the State into this State, or from one point to another in this State, for the purpose of delivery, or to deliver the same to any person, firm, corporation or company within this State, or for any person, firm, corporation or company to receive, or be in possession of, any spirituous, vinous, fermented or malt liquors or beverage containing more than one per cent. of alcohol, for his, her, its or their own use, or for the use of any other person, firm or corporation, except as hereinafter provided.

"Sec. 2. *One Gallon a Month Allowed.*—Any person may order and receive from any point without the State not exceeding one gallon within any calendar month, for his or her personal use, of spirituous, vinous, fermented or malted liquors or beverages."

It is declared to be unlawful to transport any intoxicating liquor for the purpose of delivery. The section allows a person to order and receive from without the State, not exceeding one gallon per month. It does not appear that there was anything connected with the liquor to indicate that there was any separation of the packages or anything

to indicate to whom they belonged. If a person be allowed to bring into the State a quantity of liquor and then divide it up among several, there is nothing to prevent a man from bringing in a carload and dividing it among any number of people. The facts of this case, I think, are clearly in violation of the first section, and I do not think the appellant has brought himself within the modification provided for in the second.

The ruling of the Circuit Judge was more favorable to appellant than he was entitled to, in my judgment.

There is a reasonable distinction between a common carrier with records, and a private person with no records.