24414

The STATE, Respondent v. Shawn ANDERSON, Appellant.

(470 S.E. (2d) 103)

Supreme Court

*Assistant Appellant Defender Robert M. Pachak, of S.C. Office of Appellate Defense,* Columbia, *for Appellant.*

*Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, Assistant Attorney General Charles F. Reid,* Columbia; and *Solicitor Donald V. Myers,* of Lexington, *for Respondent.*

Heard Dec. 6, 1995.

Decided Apr. 22, 1996.

TOAL, Acting Chief Justice:

Appellant Shawn Anderson appeals his conviction for murder. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

On September 13, 1993, Evette Williams was shot in the face while at the apartment of her lover Shawn Anderson. Williams died from the wound. Anderson was tried on May 31 through June 2, 1994 for Williams's murder.

Williams's sister Corenthia Williams ("Corenthia") was the first witness in the prosecution's case in chief. During her testimony, she was asked to identify the defendant. When she identified him, she addressed him saying, "Why, Shawn? Why did you do it? ... He didn't have to take her life." The judge immediately sent the jury away from the courtroom and

called a short recess.

After the recess but before the jury was brought back into the courtroom, defense counsel moved for a mistrial on the basis of Corenthia's statements while on the witness stand, as well as statements she made during the recess. Defense counsel asserted that during the recess, Corenthia bawled and screamed for between three and five minutes "at the top of her voice, 'He didn't have to do it. She had so much to live for.'" Defense counsel stated that although the jury was not present in the courtroom during this outburst, the conduct occurred in the area of the courtroom adjacent to the jury room, and that, therefore, the jury was very likely to have heard what transpired. The trial judge promptly denied the motion for mistrial. The jury then returned to the courtroom, and Corenthia's testimony continued.

At the conclusion of all the evidence, the judge charged the jury on, *inter alia*, murder and involuntary manslaughter. At defense counsel's request, he also gave a *King* charge. *See State v. King*, 158 S.C. 251, 155 S.E. 409 (1939) (holding that trial court should instruct the jury that if they had any reasonable doubt as to whether unlawful killing was murder or manslaughter, it was jury's duty to convict defendant of the lesser offense, manslaughter). After the jury had been deliberating for just over two hours, it requested that the judge recharge it on the definitions of murder, malice, and involuntary manslaughter. The judge gave the requested charges and then asked the attorneys whether they had any exceptions. Defense counsel asked that the recharges on murder, malice, and involuntary manslaughter be supplemented with a *King* charge. Noting he had already given the *King* charge, the judge refused defense counsel's request.

The jury found Anderson guilty of murder. Anderson appeals.

## LAW/ANALYSIS

### I. *Witness Outburst*

Anderson argues that the trial judge erred in refusing to grant a mistrial because of Corenthia's outburst. We disagree.

The decision whether to grant a mistrial because of a witness's outburst rests within the sound discretion of the trial judge and will not be reversed absent an

abuse of discretion or manifest prejudice to the complaining party. *E.g., State v. Wagstaff*, 202 S.C. 443, 25 S.E.(2d) 484 (1943); *accord Richmond v. State*, 302 Ark. 498, 791 S.W. (2d) 691 (1990); *State v. Allen*, 50 N.C. App. 173, 272 S.E. (2d) 785 (1980), *appeal dismissed*, 302 N.C. 399, 279 S.E. (2d) 353 (1981); *see also* 23A C.J.S. *Criminal Law* § 1176 (1989) ("It is the duty of the court to see that public sentiment is not expressed to, or in the presence of, the jury in such a way as to influence their determination. Because a trial judge is in the best position to evaluate the prejudicial effect of a spectator's outburst, the decision on whether to grant a mistrial rests within the judge's sound discretion.").

In *State v. Wagstaff*, 202 S.C. 443, 25 S.E. (2d) 484 (1943), we addressed in dicta the effect of a witness's emotional outburst. There, the mother of a rape victim was testifying at the trial of the alleged rapist. At the conclusion of her testimony, the mother rushed toward the defendant screaming "I could tear your eyes out." The defendant argued on appeal that the trial judge should have granted a mistrial based on the outburst. Although this Court found the issue had not been raised below because defense counsel had not moved for a mistrial, we nevertheless concluded that granting a mistrial would have been inappropriate. Citing the general rule that a court should grant a mistrial only when there exists a "manifest necessity" to do so, the *Wagstaff* court stated:

> We believe the jury could readily understand that the witness in question might have a hostile attitude toward the accused, because of the natural effect of the circumstances on her emotions, although there was nothing whatever in her testimony tending to show his guilt, and hence her attitude was based solely upon the testimony of others. . . . When all the circumstances of the instant case are considered we believe it is clear that even if a motion for a mistrial had been made the trial Judge would not have been justified in granting it, in the proper exercise of his discretion. There was certainly no manifest or absolute necessity for such action.

*Id.* at 453-54, 25 S.E. (2d) at 488-89.

Similarly, in *Richmond v. State*, 302 Ark. 498, 791 S.W. (2d) 691 (1990), the wife of a murder victim testified for the prose-

cution. When she identified the defendant, she made the following unsolicited comment: "God. How could you do that to him? You devil." *Richmond,* 791 S.W. (2d) at 693. the trial judge denied the defendant's motion for a mistrial. On appeal, the Arkansas Supreme Court affirmed the trial court, reasoning that the statement was spontaneous and unsolicited, that the trial judge called a recess as soon as it was made, and that he later gave a curative instruction. *Id.* at 694. the court concluded that "[u]nder such circumstances, [it could] not say that the trial court abused its discretion in not granting the appellant's motion for a mistrial." *Id.; see also* Annotation, *Emotional Manifestations by Victim or Family of Victim During Criminal Trial As Ground for Reversal, New Trial, or Mistrial,* 31 A.L.R. (4th) 229 (Law. Co-op. 1984 & Supp. 1995) (collecting cases from various jurisdictions).

■    Here, we do not believe the trial judge abused his discretion in refusing to grant a mistrial. Just as in *Richmond,* the judge here dismissed the jury and called a recess as soon as the outburst occurred in order to give the witness time to calm down. *See also State v. Jackson,* 506 S.W. (2d) 424 (Mo. 1974) (finding no error in denial of mistrial motion where trial judge called recess after witness's outburst). Furthermore, this incident occurred at the beginning of trial and was very limited in time and in scope. *Cf. State v. Gens,* 107 S.C. 448, 93 S.E. 139 (1917) (finding mistrial appropriate where, throughout entire trial, spectators exerted improper influence on jurors). Finally, Corenthia's outburst was, in large part, an expression of grief over the death of her sister, and the jury likely understood it as just that. *See Wagstaff,* 202 S.C. at 453, 25 S.E.(2d) at 488 (noting jury was likely to understand source of mother's emotional reaction). Given that the trial judge was in the best position to assess the degree to which the jury may have been prejudiced by the outburst, he did not abuse his discretion in denying Anderson's mistrial motion.

■    The curative measures taken by the trial judge were sufficient to render unnecessary a mistrial. In some cases, however, a witness's or spectator's outburst may carry such great potential for prejudice that the trial judge should give, or offer to give, a curative instruction. *See, e.g., Wagstaff, supra; Richmond, supra; see also Commonwealth v.*

*Andrews*, 403 Mass. 441, 530 N.E. (2d) 1222 (1988) (no error for trial judge to refuse to grant mistrial for witness's comments, because judge instructed the jury to disregard such comments and decide the case based on the evidence rather than on sympathy and emotion). In this case, there was no need for a curative instruction. In fact, a curative instruction in this case could have focused the jury's attention on the outburst, thus increasing the possibility of improper prejudice to the defendant. We find no error here.

## II. *Failure to Give Second King Charge*

Anderson next argues that the trial judge erred in refusing to give a second *King* charge when he recharged the jury on murder, malice, and involuntary manslaughter. We disagree.

It is well established in South Carolina that "[w]hen a jury requests an additional charge, it is sufficient for the court to charge only those matters necessary to answer the jury's request." *State v. Barksdale*, 311 S.C. 210, 216, 428 S.E. (2d) 498, 502 (Ct. App. 1993); *accord Corbin v. Prioleau*, 260 S.C. 171, 194 S.E. (2d) 875 (1973); *Rauch v. Zayas*, 284 S.C. 594, 327 S.E. (2d) 377 (Ct. App. 1985). Here, the trial judge gave the *King* charge as part of his original instructions. The jury requested a recharge only on the definitions of murder, malice, and involuntary manslaughter, and the recharge was properly limited to answering the jury's question. We find no error.

Accordingly, the decision of the trial court is AFFIRMED.

MOORE, WALLER, BURNETT, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.